# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By DReese at 4:20 pm, Mar 28, 2017

In re: )
 )  Chapter 13
QUINTAVIOUS B. FRAZIER )
 )  Number 16-40382-EJC
 *Debtor.* )
 )

## OPINION[1] ON BARBARA B. BRAZIEL'S AMENDED MOTION TO ALLOW POST-PETITION CLAIM

Pending before the Court is the Amended Motion to Allow Post-Petition Claim For the Preservation of the Estate (the "Amended Motion") (dckt. 48) filed by the Debtor's attorney, Barbara B. Braziel ("Braziel"). In this Chapter 13 case, the Court granted the Debtor's application to pay the filing fee in installments, allowing him to pay such fee within 120 days from his petition date. However, on the last day set for paying that fee, the Debtor informed his counsel, Braziel, that he was unable to pay the fee. Rather than seeking additional time pursuant to Federal Rule of Bankruptcy Procedure 1006(b), Braziel elected to pay the filing fee to the clerk and then seek reimbursement as an administrative expense. The Court is now called upon to determine whether Braziel may seek reimbursement for her advance of the filing fee through the Debtor's Chapter 13 plan.

## I. JURISDICTION

The Court has subject-matter jurisdiction over this proceeding pursuant to 28

---

[1] I am authorized to state that Chief Judge Susan D. Barrett joins in the holding in this case.

AO 72A
(Rev. 8/82)

U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B) (providing that core proceedings include "allowance or disallowance of claims against the estate . . . ").

## II. PROCEDURAL BACKGROUND

A. <u>The Debtor's Chapter 13 Plan</u>

The Debtor filed his Chapter 13 bankruptcy petition and plan on March 7, 2016. (Dckts. 1, 2). In his plan, the Debtor proposed to make 60 monthly payments of $362.00 and pay unsecured creditors a 0% dividend or a prorata share of $100.00, whichever is greater. (Dckt. 2). To date, nine (9) claims have been filed in this case: one (1) secured claim for $14,219.70, seven (7) general unsecured claims totaling $28,197.83 and Braziel's priority claim for the $310.00 Chapter 13 filing fee.

On March 14, 2016, the Trustee issued a Notice to Commence Wage Withholding and subsequently began to receive the Debtor's proposed monthly plan payments. A confirmation hearing was held on June 1, 2016. On June 3, 2016, the Trustee filed his Motion on Plan Confirmation (dckt. 28) which provided:

> Trustee moves that debtor(s)' plan be confirmed, subject to payment of the filing fee. The plan commits Debtor(s)' disposable income to the plan for a period of at least thirty-six (36) months and otherwise conforms to the requirements of Title 11. The plan will pay $100.00 or more to unsecured creditors, but in any event will pay not less than 0.00% of the total allowed unsecured claims.

On June 8, 2016, the Court entered its Order on Confirmation (dckt. 30) conditioning confirmation of the Debtor's plan upon the payment of the $310.00 Chapter 13 filing fee.

B. <u>Filing Fee Installments</u>

Along with his petition, the Debtor filed an Application to Pay Filing Fee in Installments (dckt. 4), which was granted by this Court's order dated March 9, 2016 (dckt. 9). Pursuant to this order, the Debtor was required to pay the $310.00 Chapter 13 filing fee on or before July 5, 2016[2] in no more than four installment payments. (Dckt. 9). The Debtor failed to pay his filing fee by the July 5, 2016 deadline and did not seek a 60-day extension of such deadline as allowed by Bankruptcy Rule 1006(b)(2). As a result, on July 7, 2016, the Court entered its Order To Pay Filing Fees requiring the Debtor to pay his filing fee in full, or provide a written request to be heard on or before July 21, 2016, to avoid dismissal of his case. (Dckt. 32)

C. <u>The Advance by Braziel</u>

According to Braziel, after the Court filed its Order to Pay Filing Fees, she spoke with the Debtor by telephone regarding his need to pay the filing fee to prevent dismissal of his bankruptcy case. (Dckt. 48, ¶ 8). After determining that the Debtor did not have sufficient funds to pay the filing fee, Braziel asserts that she "agreed to advance the $310.00 expense, pay the filing fee to the Court, and thereafter seek allowance of an administrative expense claim in the Debtor's case." *Id.* On July 21, 2016, Braziel electronically paid the filing fee on the Debtor's behalf. Because the filing fee was paid, the Court granted confirmation of the Debtor's plan on August 3, 2016. (Dckt. 35).

---

[2] This deadline represented the 120th day after the Debtor's petition date, as contemplated by Bankruptcy Rule 1006(b) ("the final installment shall be payable no later than 120 days after filing the petition").

D. <u>Braziel's Proof of Claim</u>

Shortly after paying the filing fee, on July 26, 2016, Braziel filed a proof of claim (Official Form 410) for a $310.00 claim based on "[s]ervices performed." (Claims Register 9-1). Braziel made the following representations in her proof of claim:

1) Paragraph 9 of Official Form 410 asks: Is all or part of the claim secured? Braziel checked "Yes" and described the nature of the property securing her claim as "Administrative Fees."

2) Paragraph 12 of Official Form 410 asks: Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? Braziel checked "No."

3) Part 3 of Official Form 410 asks who is the person completing the proof of claim. Braziel checked "I am the trustee, or the debtor, or their authorized agent."

(Claims Register 9-1).

Braziel then filed her Motion to Allow Claim 9[3] ("Motion to Allow Claim") seeking an order from this court allowing her $310.00 claim to be added to the Debtor's case as an "administrative claim" and directing the Trustee "to fund this claim in accordance with the terms of the confirmed plan." (Dckt. 34). Braziel's Motion to Allow Claim did not invoke any section of the Bankruptcy Code or a Bankruptcy Rule in support of her claim. Nor did Braziel attach or reference any document specifying the Debtor's obligation to repay this advance.

On August 30, 2016, the Trustee objected to Braziel's Motion to Allow Claim on the following basis:

---

[3] The introductory paragraph of the Motion to Allow Claim "moves the Court for an order allowing a *pre-petition* claim to be filed after the bar date." Braziel's certificate of service also makes reference, not to a Motion to Allow Claim, but to a "Motion to Allow Pre-Petition Debt" and "Order Allowing Pre-Petition Debt." (Dckt. 34, p. 3).

> The claim is for the post-petition payment of the filing fees due the Court for the filing of the Chapter 13 petition. The motion circumvents the provisions of the General Order 2015-5[4] providing for the payment of the filing fees directly to the Clerk. The provisions of Title 11 allowing for the payment of compensation and reimbursement awarded under 11 U.S.C. § 330(a) do not contemplate reimbursement for the filing fees due the Court in order to file a Chapter 13 petition. The filing of a claim for the reimbursement of the filing fee indicates that the attorney is no longer a disinterested person and may have an interest adverse to the estate as a creditor in the case with an administrative claim. *See* 11 U.S.C. § 327. The motion to allow the administrative claim filed by [Braziel] for Debtor was served only on the Trustee, with no notice to all Creditors in the case with timely filed, allowed claims even though the Creditors are impacted by the allowance of such a claim. Notice to all parties in interest and a hearing are needed to resolve the matter. See 11 U.S.C. § 503(b).

(Dckt. 37).

E. The Hearing

On October 13, 2016, the Court held a hearing[5] on Braziel's Motion to Allow Claim and the Trustee's related objection. Notably, the Debtor did not appear. At the hearing, Braziel's co-counsel, James B. Wessinger, III ("Wessinger"), stated that Braziel's employment contract with the Debtor gave her sufficient authority to pay the filing fees on the Debtor's behalf and obligated the Debtor to repay Braziel for the advance of the filing fee[6]. Thus, Wessinger argued that it was appropriate for Braziel to file a proof of claim in

---

[4] General Order 2015-5 provides "Effective March 1, 2016, the filing fees for filing a case under Chapter 13 of Title 11 of the United States Code prescribed by 28 U.S.C. § 1930 shall no longer be paid through the Chapter 13 plan . . . said filing fees shall be paid directly to the Clerk . . . ." Bankr. S.D. Ga. Gen. Order 2015-5.

[5] On September 2, 2016, the Clerk's Office sent a Notice of Hearing on Braziel's Motion to Allow Claim to all creditors provided in the Debtor's creditor matrix. (Dckt. 40).

[6] Braziel's employment contract authorized her "to take any actions necessary to protect the Debtor(s) in this matter" and "appoint[ed] her to act on Debtor(s) behalf in any way that she deems necessary." (Dckt. 48-1). The employment contract does not expressly contemplate this extension of credit by Braziel, nor the reimbursement of expenses, but does provides that the

this Debtor's case. At the conclusion of the hearing, the Court took the matter under advisement and instructed Braziel to amend her Motion to Allow Claim and proof of claim to set forth the specific Code provision that serves as the basis for her administrative expense claim. Further, because Braziel's claim was clearly unsecured, the Court requested Braziel amend her proof of claim accordingly.

F. <u>Amended Proof of Claim</u>

After the hearing, on October 21, 2016, Braziel amended her proof of claim to reflect a $310.00 *unsecured* claim based on the "[c]ourt filing fee advanced post-petition." Braziel also made the following changes:

1) Paragraph 12 of Official Form 410 now indicates that Braziel's claim is entitled to priority under 11 U.S.C. § 507(a)(2)[7].

2) On Part 3 of Official Form 410 Braziel checked "I am the creditor."

(Claims Register 9-2). In addition, Braziel filed the instant Amended Motion, which invokes 11 U.S.C. § 503(b)(1)(A) as the sole basis for her claim to be allowed as an administrative expense. (Dckt. 48).

---

Debtor agrees to pay an attorney fee of $3,000.00 for all legal services rendered up to confirmation, an hourly rate of $225.00 for all attorney services rendered after confirmation, and the sum of $250.00 for each Motion of Relief From Stay. *Id.* The employment contract further provides that "[t]he Debtor(s) agree to pay for any additional services including but not limited to the following: (a) representation of the Debtor(s) in any Motion for Leave to Sell, (b) motions to approve personal injury claims, (c) dischargeability actions, (d) judicial lien avoidances, (e) relief from stay actions, or (f) any adversary proceedings." *Id.*

[7]The proof of claim form (Official Form 410) instructs parties to "not use this form to make a request for a payment of an administrative expense" and to "[m]ake such request according to 11 U.S.C. § 503."

## III. CONCLUSIONS OF LAW

By her Amended Motion, Braziel seeks to be reimbursed through the Debtor's plan for the $310.00 filing fee she advanced in this case. Braziel's motion has changed from a Motion to Allow Claim to the more provocatively entitled Amended Motion to Allow Post-Petition Claim for the Preservation of the Estate. What was first characterized as a *pre-petition* debt filed after the claims bar date is now characterized as a *post-petition* debt. Braziel initially filed her claim as a secured claim with no priority. She now asserts that she holds an unsecured priority claim. Finally, Braziel first filed her proof of claim and Motion to Allow Claim on behalf of the Debtor. Braziel now asserts the claim on behalf of herself, as a creditor.

These changes to Braziel's position reflect a certain amount of confusion about the precise basis upon which she seeks reimbursement of the filing fee advanced by her. There are several ways to characterize what Braziel is really seeking to accomplish in her Amended Motion. The first option, urged by Braziel, is to consider the "claim" a request for allowance of an administrative expense under § 503(b)(1)(A), on the theory that advancing the filing fee was an "actual and necessary cost or expense of preserving the estate." Secondly, the filing fee might be viewed as a reimbursable expense under § 503(b)(2) relating to the compensation and expenses awarded under § 330(a); the Trustee argues this is improper. Third, Braziel's post-petition claim might be allowable under 11 U.S.C. § 1305(a)(2) – it is, after all, a claim which arose post-petition. While neither party invoked §

1305(a)(2)[8], the Court will address it anyway. Ultimately, none of these theories support allowance of Braziel's asserted claim or her request for reimbursement through the Debtor's plan.

>  A. <u>Braziel Is Not Entitled to Payment of an Administrative Expense Pursuant to § 503(b)(1)(A)</u>

Pursuant to 11 U.S.C. § 503(a), "an entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." Section 503(b) provides a non-exclusive list[9] of allowable administrative expenses, including the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). In order to maximize the value of the estate preserved for the benefit of all creditors, § 503 administrative expenses are to be construed narrowly. *Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus., Inc.)*, 19 F.3d 1371, 1377 (11th Cir. 1994). To determine whether a claim qualifies as an administrative expense under § 503(b)(1)(A), courts generally apply a two-prong test: 1) the claim must arise from a transaction with the bankruptcy estate; and 2) the claim must have directly and substantially benefitted the

---

[8] Some courts have held that a § 1305(a)(2) claim may also qualify as an administrative expense under § 503(b). *See e.g.*, *In re Rattler*, 2013 WL 828286 at *3 (Bankr. S.D. Ala. 2013) ("Section 1305(a)(2) and § 503(b)(1), as written, are not mutually exclusive"); *In re Chaney*, 308 B.R. 588 (Bankr. N.D. Ga. 2004).

[9] 11 U.S.C. § 503(b) provides that administrative expenses "include" the nine categories listed in such code section. Section 102(3) provides that the term "include" and "including" are not to be construed as limitations. Accordingly, the nine described categories are not an exhaustive list of all of the types of claims that are entitled to administrative priority. However, Braziel has not asserted any other basis for her entitlement to an administrative expense.

estate[10]. 4 *Collier on Bankruptcy* ¶ 503.06[3] (16th ed. 2015).

In her Amended Motion, Braziel argues that her filing fee advance "preserved the estate" by preventing the Debtor's case from being dismissed. The Court does not find this argument persuasive. First, Braziel's "advance" arises out of a transaction with the Debtor, not his estate. While it is true that the Debtor's bankruptcy estate was in existence at the time Braziel advanced the filing fees, the obligation to pay the filing fee under 28 U.S.C. § 1930 is not an obligation of the estate. Rather, 28 U.S.C. § 1930, requires the party commencing a bankruptcy case (here, the Debtor) to pay the appropriate filing fee. Accordingly, Braziel's "advance" benefitted the Debtor personally by satisfying his obligation to pay the required filing fee.

Second, Braziel's "advance" does not provide a direct or substantial benefit to the estate. Generally, claims predicated on the actual and necessary costs and expenses of preserving the estate involve, for example, outlays for repairs, upkeep, rent, insuring the value of property, or other goods and services incidental to protecting, conserving, maintaining and rehabilitating the estate. 4 *Collier on Bankruptcy* 503.06[1] (16th ed. 2015). Such expenses provide a benefit to the estate, and its creditors, by maintaining or adding to the value of the assets of the debtor's estate. The advancement of a Debtor's filing fee does not provide such a benefit to the estate. Rather, it only serves to satisfy the Debtor's requirement to pay a filing fee under 28 U.S.C. § 1930.

---

[10] There are exceptions to the benefit test. Under the so-called *Reading* doctrine, courts have found that damages resulting from post-petition torts committed by a debtor-in-possession or trustee are "actual and necessary costs" of administration. 4 *Collier on Bankruptcy* 503.06[3][c][i] (16th ed. 2015); *See Reading Co. v. Brown*, 391 U.S. 471 (1968).

Because Braziel's advance fails both prongs of the two-prong test under 11 U.S.C. § 503(b)(1)(A), she is not entitled to an administrative expense under that code section.

B. <u>Braziel Is Not Entitled to Payment of an Administrative Expense Pursuant to § 503(b)(2)</u>

Section 503(b) of the Bankruptcy Code also allows as an administrative expense "compensation and reimbursement awarded under section 330(a) of this title." 11 U.S.C. § 503(b)(2). Although Braziel does not appear to make an argument that the filing fee advance is an administrative expense under § 503(b)(2), the Trustee at least raised the question by asserting in his Objection that the payment of a debtor's filing fee is not the type of reimbursable expense contemplated by 11 U.S.C. § 330(a). (Dckt. 37).

Section 330(a) provides the statutory authority for compensating the services and reimbursing the expenses of officers of the estate, including debtors' attorneys. A Chapter 13 debtor's attorney may be paid by the estate only pursuant to § 330(a)(4)(B), which provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B); *See In re Lamie v. United States Trustee*, 540 U.S. 526 (2004)(observing that the Bankruptcy Reform Act of 1994, which deleted the phrase "the debtor's attorney" from § 330(a)(1), did not affect compensation for Chapter 13 debtors' attorneys because their compensation is authorized by § 330(a)(4)(B)).

Many courts addressing the propriety of fee applications have allowed Chapter 13 debtor's attorneys to not only seek compensation for the value of their services, but also reimbursement for expenses under § 330(a)(4)(B). *See, e.g. In re Powell*, 538 B.R. 615, 617 (Bankr. D. Mass. 2015) ("[section] 330(a)(4)(B) permits counsel for a chapter 13 debtor to seek an award of fees and expenses . . ."); *In re Pastran*, 462 B.R. 201, 213 (Bankr. N.D. Tex.2011); *In re Marvin*, 2010 WL 2176084 (Bankr. N.D. Iowa 2010); *In re Williams*, 384 B.R. 191, 194 (Bankr. N.D. Ohio 2007).

On the other hand, at least one bankruptcy court has held that the plain meaning of "compensation" and the absence of "reimbursement" in § 330(a)(4)(B) eliminates the basis for reimbursing a Chapter 13 debtor's attorney for his or her expenses. *In re Marotta*, 479 B.R. 681, 90 (Bankr. M.D. N.C. 2012). Using the conventional rules of statutory construction, the *Marotta* court found:

> Interpretation of a statute starts with the plain meaning of the text of that statute. *United States v. Wright*, 625 F.3d 583, 591 (9th Cir.2010). "Courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). *See also Lamie v. U.S. Trustee*, 540 U.S. 526, 533 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.") (internal quotation omitted) (interpreting § 330 of the Bankruptcy Code).
>
> The Oxford English Dictionary defines "compensation" as "salary or wages; payment for services rendered." Oxford English Dictionary (2d ed. 1989) "Reimbursement" is defined as "repayment." Id. Although "compensation" may encompass reimbursement for expenses in other contexts, the plain meaning of the statute suggests that Congress did not intend reimbursement of attorney expenses under Section 330(a)(4)(B) ("reasonable compensation") as it did under Section 330(a)(1) ("reasonable compensation ... and reimbursement for actual, necessary expenses"). The use of the word "reimbursement" in a neighboring paragraph

> suggests that Congress indeed meant the plain, dictionary definition of "compensation" in Section 330(a)(4)(B). The "commonsense canon of noscitur a sociis" counsels that a word is given "more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (citing 2A Sutherland Statutes and Statutory Construction § 47.16 (7th ed. 2007)). Applying this canon, the Court determines that the narrow, plain meaning of the word "compensation" to mean payment for services, rather than reimbursement for expenses.

*Marotta*, 479 B.R. at 689-90.

Respectfully, this Court disagrees that the omission of the words "reimbursement of expenses" from § 330(a)(4)(B) means that a Chapter 13 debtor's attorney can never seek reimbursement for his or her expenses. It is easy to imagine contested matters that may arise in a Chapter 13 case that would require a debtor's attorney to incur expenses, such as deposition costs or witness fees. To suggest that such direct expenses of representing the debtor are not reimbursable seems contrary to the concepts of reasonableness and necessity encompassed in § 330(a)(4)(B). Moreover, that subsection refers back to the "other factors set forth in this section," which are the factors relating to other professionals compensated under § 330(a)(1).

This Court, as well as many other courts, have adopted a "no-look" fee which obviates the need, in most cases, to address whether the expenses of a Chapter 13 debtor's attorney are reimbursable under § 330(a)(4)(B). This Court's General Order 2010-3 provides that "a claim for attorney's fees for services rendered and *expenses advanced* to a Chapter 13 debtor will be deemed automatically approved by the Court, in the absence of an objection, so long as said claim does not exceed the sum of three thousand dollars ($3,000.00)." Bankr. S.D. Ga. Gen. Order 2010-3 (emphasis added). Thus, this Court

acknowledges that a Chapter 13 debtor's attorney may incur certain reimbursable expenses, but these expenses are included in the Court's "no-look" fee.

If, however, a Chapter 13 debtor's attorney seeks compensation or reimbursement of expenses above the Court's "no-look" fee, General Order 2010-3 provides:

> In the event a debtor's attorney subsequently determines that an award of $3,000.00 does not adequately compensate the attorney for legal services rendered, the attorney may petition for reasonable attorney's fees disclosing all time expended in such representation from the beginning of the case under the standards set forth in 11 U.S.C. § 330 and *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).

Bankr. S.D. Ga. Gen. Order 2010-3.

In this case, Braziel is not seeking payment of an administrative expense under § 503(b)(2), nor has she met the procedural requirements[11] necessary under General Order 2010-3 to seek compensation (or reimbursement of expenses) above this Court's $3,000.00 "no-look" fee. Regardless, the Court finds that the advance of a Chapter 13 debtor's filing fee is not properly reimbursable under 11 U.S.C. § 330(a)[12]. Pursuant to 28 U.S.C. § 1930, a debtor's filing fee is, in essence, his or her cost of admission. To allow a debtor's attorney to satisfy this obligation of the debtor and seek repayment as an administrative expense funded by the Trustee has the potential to push this cost onto creditors. Nothing in the Bankruptcy Code contemplates such treatment of the filing fee.

---

[11] To seek compensation above the "no-look" fee, a Chapter 13 debtor's attorney is required to file a fee application containing certain information, including an itemized statement of his or her fees and expenses. Fed. R. Bankr. P. 2016(a); *In re Nelson*, 2017 WL 449581 (Bankr. E.D. Wis. 2017). No such application has been filed by Braziel.

[12] The Court recognizes that a filing fee paid by a debtor's attorney may be properly reimbursable in the context of a Chapter 7 case because it is generally paid from funds received from the debtor. *See In re Saturley*, 431 B.R. 509, 520 (Bankr. D. Maine 1991).

### C. Braziel's Post-Petition Claim Must Be Disallowed Pursuant to 11 U.S.C. § 1305(c)

At the October 13, 2016 hearing, Wessinger indicated that Braziel's employment contract obligates the Debtor to repay Braziel for the filing fee advanced. As a result, Braziel filed her amended proof of claim for the "[c]ourt filing fee advanced post-petition" and the instant Amended Motion seeking allowance of such "post-petition claim."

Section 1305 of the Bankruptcy Code governs the filing and allowance of post-petition claims in a Chapter 13 case:

> **11 U.S.C. § 1305. Filing and allowance of postpetition claims**
>
> (a) A proof of claim may be filed by any entity that holds a claim against the debtor–
>
>> (1) for taxes that become payable to a governmental unit while the case is pending; or
>>
>> (2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan.
>
> \*       \*       \*
>
> (c) A claim filed under subsection (a)(2) of this section shall be disallowed *if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained.*

11 U.S.C. § 1305 (emphasis added).

Here, since Braziel's claim is not for taxes payable to a governmental unit, it must fall within the purview of § 1305(a)(2) to be allowed. Braziel's $310.00 advance is likely a "consumer debt,[13]" as it was used to pay the filing fee for the Debtor's personal bankruptcy. However, the Court doubts whether such debt was "for property or services

---

[13]The Bankruptcy Code defines a consumer debt as a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).

14

necessary for the debtor's performance under the plan." The legislative history of this code section references two examples of the kind of necessary post-petition expenses for which § 1305(a)(2) was enacted: "auto repairs in order that the debtor will be able to get to work, or medical bills." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 427-28 (1978). The need to advance a Debtor's filing fee arguably does not involve the same exigent circumstances as those evidenced in the legislative history of § 1305(a)(2). *See In re Phillips*, 219 B.R. 1001, 1007 (Bankr. W.D. Tenn. 1998) (finding, based on the legislative history and the interpretation of courts which have dealt with the issue, that routine legal work by a debtor's attorney is not within the purview of § 1305(a)).

Regardless, even if Braziel's claim fell within the purview of § 1305(a)(2), the Court must disallow Braziel's claim under § 1305(c). For a post-petition claim to be eligible for allowance, one of three conditions must be satisfied: 1) prior approval of the Chapter 13 trustee was obtained; 2) the claim holder did not know and should not have known of the need to get prior approval of the trustee; or 3) the prior approval of the trustee was not practicable. *Phillips*, 219 B.R. at 1007.

Here, the first condition has clearly not been met because the Trustee has objected to Braziel's claim. Second, the Court finds it unlikely that Braziel, as the Debtor's attorney, did not know of the need to obtain approval of the trustee to incur a post-petition debt. Third, the Debtor and Braziel were presumably aware of the filing fee deadline of July 5, 2016 at the time the Debtor filed his petition and had the ability to seek an additional 60 days to pay the filing fee under Bankruptcy Rule 1006(b). However, the Debtor never made

such a request. Thus, Braziel's decision to advance the filing fee was not prompted by an emergency situation that rendered obtaining the Trustee's approval impracticable. Because the Court "shall" disallow a post-petition claim which fails to meet the requirement of § 1305(c), Braziel's Amended Motion, to the extent it seeks allowance of a post-petition claim, is denied.

## IV. CONCLUSION

Congress enacted a statute setting forth the filing fees which debtors must pay to file under the various chapters of the Bankruptcy Code. In that same statute, Congress provided that a Chapter 7 individual debtor may seek a waiver of the filing fee based on certain income criteria. Congress did not provide for the waiver of the filing fee in a Chapter 13 case. However, Congress did provide that an individual debtor, including a Chapter 13 debtor, may pay his or her filing fee in installments. Indeed, the Debtor took advantage of this latter provision and was granted leave to pay the filing fee in installments by a given deadline. What Congress did not provide for was what happened in this case – the payment of the filing fee by debtor's counsel followed by a request to be reimbursed through the Debtor's plan.

The Court finds that Braziel's advance of the Debtor's filing fee may give rise to a post-petition claim against the Debtor. However, to the extent Braziel holds a valid claim, it is not allowable in this case under 11 U.S.C. § 1305. Further, the Court finds that Braziel is not entitled to reimbursement of the Debtor's filing fee as an administrative expense under 11 U.S.C. § 503(b)(1)(A) or (b)(2). While the Court recognizes that certain

expenses of a Chapter 13 debtor's attorney may give rise to an administrative expense claim, it does not find that the advance of a debtor's filing fee is such an expense. Accordingly, the Court will enter a separate order DENYING Braziel's Amended Motion to Allow Post-Petition Claim For the Preservation of the Estate (dckt. 48).

Dated at Savannah, Georgia, this 28th day of March, 2017.

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia